IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

ELEGANT MASSAGE, LLC d/b/a LIGHT
STREAM SPA, on behalf of itself and all
others similarly situated,

                          Plaintiff,

v.                                                              Case No. 2:20-cv-00265-RAJ-LRL

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY
COMPANY,

                          Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
ALTER OR AMEND THE ORDER DENYING STATE FARM'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR § 1292(b) CERTIFICATION**

**INTRODUCTION**

       State Farm's motion focuses on two central issues of Virginia law.  First, the Court

declined to apply State Farm's anti-concurrent cause ("ACC") language, holding that "the

expansive anti-concurrent causation clause is not a recognized or settled doctrine in the Court's

jurisdiction," and "the anti-concurrent theory has not been established as law in this jurisdiction."

(Op. at 23-24, [PageID# 949-50]).  In fact, Virginia courts, including the Virginia Supreme

Court, enforce the "plain terms" of similar ACC clauses.  For instance, in *Lower Chesapeake

Associates v. Valley Forge Insurance Co.*, the Virginia Supreme Court applied the "plain terms"

of ACC language substantially similar to State Farm's and affirmed the denial of coverage for

losses "caused 'directly or indirectly' by one of the enumerated causes or events, 'regardless of

any other cause or event that contributes concurrently or in any sequence' to the loss." 532

S.E.2d 325, 331 (Va. 2000) (Keenan, J.).  State Farm respectfully submits that the Court's decision not to apply State Farm's ACC language is contrary to Virginia law and constitutes clear error that merits reconsideration or certification under 28 U.S.C. § 1292(b).

Second, the Court's interpretation of the Virus Exclusion also merits reconsideration or 1292(b) certification.  Virginia law instructs that separate insurance policy exclusions should be applied and enforced separately, each in accordance with its plain terms.  In *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321 (Va. 2012), the Virginia Supreme Court held that, in an exclusion for "[l]atent defect, inherent vice, or any quality in property that causes it to damage or destroy itself," the phrase "that causes it to damage or destroy itself" modified only the words "any quality" and could not be read to limit or modify the exclusions for "latent defect" and "inherent vice." *Id.* at 326.  The *TravCo* Court emphasized that where, as here, an exclusion is "phrased in the disjunctive, using 'or' to separate the stated excluded losses," the "disjunctive may not be omitted or replaced with the conjunctive without doing violence to the plain language of the policy." *Id.*[1]  Similarly, in *Transcontinental Insurance Co. v. RBMW*, 551 S.E.2d 313 (Va. 2001), the Virginia Supreme Court held that each item listed in a policy exclusion for "[f]lood, surface water, waves, tides, tidal waves, overflowing of any body of water or their spray" was a separate exclusion and that "overflowing of any body of water" could not be interpreted as modifying and limiting the separate exclusions for "flood," "surface water," "waves," "tides," and "tidal waves." *Id.* at 318-19.  Further, it is a "basic tenet of Virginia law that the courts, when interpreting a contract, 'construe it as written' and 'do not add terms the parties themselves did not include.'" *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 724 S.E.2d 707, 714 (Va. 2012) (citations omitted).  Here, this Court erroneously incorporated into the Virus Exclusion language

---

[1] Due to an artifact in the printout, State Farm's opening memorandum incorrectly noted that the word "disjunctive" was in bold and underlined in the original.

from the separate exclusion for fungi and wet or dry rot and further limited the Virus Exclusion by adding the requirement not found in the policy language that the virus must have been present at the insured property.  It is respectfully submitted that these limitations are contrary to the plain language of the Virus Exclusion and the Court's interpretation of the exclusion is clearly erroneous as a matter of Virginia law.

As shown in State Farm's moving papers, an overwhelming number of federal district courts have enforced a policy's virus exclusion for COVID-19 business interruption claims, even where the virus was not alleged to be present at the plaintiff's property.  (*See* [PageID# 992, n.1] (listing cases)).  Since then, at least 27 additional federal cases have been dismissed pursuant to virus exclusions.[2]  As one court aptly stated, "'federal courts interpreting virtually identical Virus Exclusions have nearly unanimously determined that these exclusions bar coverage of similar claims.'  These courts have dismissed claims where policyholders claimed their losses resulted

---

[2] Those cases enforcing the policy's virus exclusion where it was noted that, as here, the plaintiff did not allege that COVID-19 was present at its premises are denoted with a diamond (♦).  *ATCM Optical Inc. v. Twin City Fire Ins. Co.*, 2021 WL 131282, at *6-8 (E.D. Pa. Jan. 14, 2021); *BA LAX, LLC v. Hartford Fire Ins. Co.*, 2021 WL 144248, at *4 (C.D. Cal. Jan. 12, 2021); *Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, 2021 WL 663675, at *9 (N.D. Ohio Feb. 19, 2021); *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, 2021 WL 486917, at *4-5, 7 (D.N.J. Feb. 10, 2021); *Colgan v. Sentinel Ins. Co.*, 2021 WL 472964, at *3-4 (N.D. Cal. Jan. 26, 2021)(♦); *Digital Age Mktg. Grp. v. Sentinel Ins. Co.*, 2021 WL 80535, at *3-4 (S.D. Fla. Jan. 8, 2021); *Dye Salon, LLC v. Chubb Indem. Ins. Co.*, 2021 WL 493288, at *4-8 (E.D. Mich. Feb. 10, 2021)(♦); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 2021 WL 22314, at *7-8 (M.D. Fla. Jan. 4, 2021)(♦); *Eye Care Center of New Jersey, PA v. Twin City Fire Ins. Co.*, 2021 WL 457890, at *2-4 (D. N.J. Feb. 8, 2021); *Family Tacos LLC v. Auto Owners Ins. Co.*, 2021 WL 615307, at *9-10 (N.D. Ohio Feb. 17, 2021); *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Southwest*, 2021 WL 289547, at *8 (E.D. Pa. Jan. 28, 2021); *Fuel Recharge Yourself, Inc. v. Amco Ins. Co.*, 2021 WL 510170, at *3-4 (E.D. Pa. Feb. 11, 2021); *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 2021 WL 679227, at *2-4 (N.D. Ill. Feb. 22, 2021); *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 2021 WL 86777, at *8-9 (S.D. Fla. Jan. 11, 2021); *Michael J. Redenburg, Esq., PC v. Midvale Idem. Co.*, 2021 WL 276655, at *8 (S.D.N.Y. Jan. 27, 2021); *Moody v. Hartford Fin. Grp. Inc.*, 2021 WL 135897, at *8-10 (E.D. Pa. Jan. 14, 2021); *Palmdale Estates, Inc. v. Blackboard Ins. Co.*, 2021 WL 25048, at *3 (N.D. Cal. Jan. 4, 2021); *Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, 2021 WL 234355, at *7-8 (C.D. Cal. Jan. 20, 2021)(♦); *Phan v. Nationwide Gen. Ins. Co.*, No. 20-cv-7616-MWF, Minute Order [ECF 31] (C.D. Cal. Feb. 1, 2021)(♦); *Protégé Rest. Partners LLC v. Sentinel Ins. Co. Ltd.*, 2021 WL 428653, at *8 (N.D. Cal. Feb. 8, 2021); *Pure Fitness LLC v. Twin City Fire Ins. Co.*, 2021 WL 512242, at *4 (N.D. Ala. Feb. 11, 2021); *Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co.*, 2021 WL 81659, at *3 (N.D. Ill. Jan. 7, 2021); *Roundin3rd Sports Bar LLC v. Hartford*, No. 20-cv-05159 [ECF 60] (C.D. Cal. Jan. 14, 2021); *Stanford Dental, PLLC v. Hanover Ins. Grp., Inc.*, 2021 WL 493322, at *3-4 (E.D. Mich. Feb. 10, 2021)(♦); *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, 2021 WL 131555, at *7-8 (E.D. Pa. Jan. 14, 2021); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 2021 WL 131556, at *10 (E.D. Pa. Jan. 14, 2021); *Zagafen Bala, LLC v. Twin City Fire Ins. Co.*, 2021 WL 131657, at *7-8 (E.D. Pa. Jan. 14, 2021).

3

either from the presence of the virus or from governmental orders intended to slow the spread of the virus. These courts were right to dismiss these claims in the face of virus exclusions." *Riverwalk Seafood Grill*, 2021 WL 81659, at *3 (citation omitted). And "[s]ince our decision in *Riverwalk*, other courts nationwide are in accord." *Mashallah, Inc.*, 2021 WL 679227, at *2.

If the Court is disinclined to reconsider its ruling, the Court should certify the Opinion for interlocutory review under 28 U.S.C. § 1292(b). (*See* Point II *infra*.) The Fourth Circuit has repeatedly recognized the propriety of granting 1292(b) review of questions of contract law and contract interpretation. *See*, *e.g.*, *Ford v. Big Daddy Drayage LLC*, 559 F. App'x 222, 224-25 (4th Cir. 2014); *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377-79 (4th Cir. 1998).

Moreover, all three requirements of Section 1292(b) are met. First, if the Fourth Circuit construes the Virus Exclusion in State Farm's favor, Plaintiff's claims would fail as a matter of law, making the issue of law "controlling." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011). Second, there is substantial ground for difference of opinion. Binding Virginia precedent enforces ACC clauses and the plain language of policy exclusions. Further, Judge Brinkema's ruling in *Barroso, Inc. v. Twin City Fire Insurance Co.*, No. 1:20-cv-632 (E.D. Va. Nov. 10, 2020), conflicts irreconcilably with this Court's Opinion, and nearly every other federal court that has reached a virus exclusion in a COVID-19 business interruption case has found the plaintiffs' claims to be excluded. Third, if the Fourth Circuit accepts review and reverses, this case would be terminated. Section 1292(b) certification should be granted.

## ARGUMENT

### I.   THE COURT SHOULD RECONSIDER ITS OPINION AND DISMISS THE CASE

In opposing reconsideration of the Court's interlocutory order denying State Farm's motion to dismiss, Plaintiff relies heavily on inapposite cases applying the standards for motions to reconsider final judgments. ([PageID # 1094-95, 1097].) Yet because "every order short of a

final decree is subject to reopening at the discretion of the district judge," *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983), an interlocutory order "'is subject to reconsideration at any time.'" *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (citation omitted). "This is because a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." *Id.* at 514-15. Accordingly, motions to reconsider interlocutory orders "are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Id.* at 514. Though a court's discretion may be "guided" by the factors cited by Plaintiff, those factors "do[] not and cannot limit the power of a court to reconsider an earlier ruling." *Hicks v. Brennan*, 2017 WL 4476835, at *9 (E.D. Va. Apr. 27, 2017) (citing *American Canoe*, 326 F. 3d at 515), *aff'd*, 721 F. App'x 288 (4th Cir. 2018).

Under either standard, State Farm's motion for reconsideration advances appropriate grounds and should be granted. Courts in this District have identified two bases for reconsideration that apply here. First, a motion to reconsider is appropriate where the Court "'has made a decision outside the adversarial issues presented to the Court by the parties.'" *Genetic Veterinary Scis., Inc. v. Laboklin GmbH & Co. KG*, 2018 WL 1626033, at *3 (E.D. Va. Apr. 4, 2018) (citation omitted). That is the case here, with the Court's decision not to enforce the Policy's ACC language. Plaintiff does not and cannot dispute that, in opposing State Farm's motion to dismiss, Plaintiff did not argue that the ACC language should be disregarded as a matter of Virginia law. (*See* [PageID# 997-98, 1105-07].) Rather, that position was raised, for the first time, by the Court in its decision. (Op. at 23-24, [PageID# 949-50].) State Farm respectfully submits that the Court should reconsider its ruling on the ACC language in light of authorities and analyses advanced in this motion.

Second, a Court may reconsider an interlocutory order for clear error. *Genetic Veterinary*,

2018 WL 1626033, at *2.  State Farm respectfully submits that, on both issues of policy interpretation presented by State Farm's motion for reconsideration, the Court overlooked relevant Virginia decisions that mandate a different result.  Virginia courts, including the Virginia Supreme Court, apply ACC language virtually identical to State Farm's in accordance with its plain meaning.  The Virginia Supreme Court has also held that courts are not permitted to rewrite insurance policy exclusions by incorporating language from one exclusion into another, as this Court did in construing State Farm's Virus Exclusion.  As the Fourth Circuit explained in *American Canoe*, "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law."  326 F.3d at 515.

### A.   The Court Overlooked Binding Virginia Precedent Enforcing Anti-Concurrent Causation Clauses Similar to State Farm's

This Court should reconsider its ruling that State Farm's ACC language should be disregarded and that the Virus Exclusion would apply only if virus was the direct and immediate cause of Plaintiff's claimed loss.  In so ruling, the Court overlooked relevant Virginia decisions that mandate a different result.  Those decisions show that Virginia courts, including the Virginia Supreme Court, apply ACC language virtually identical to State Farm's in accordance with its plain language.  A motion for reconsideration is appropriate because of "'the clearly erroneous nature of [the Court's] ruling'" under Virginia law.  *Genetic Veterinary*, 2018 WL 1626033, at *2 (citation omitted).  Contrary to Plaintiff's assertions, the validity of State Farm's ACC clause merits the Court's further consideration in view of the authorities addressed in this motion.

State Farm's ACC language introduces and defines the scope of the Virus Exclusion:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolate or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

(Policy at 5; [ECF 20-1, PageID# 310].)

In its Opinion, this Court declined to enforce this ACC language, holding that "the expansive anti-concurrent causation clause is not a recognized or settled doctrine in the Court's jurisdiction," and that "the anti-concurrent theory has not been established as law in this jurisdiction." (Op. at 23-24, [PageID# 949-50].) Yet ACC clauses such as State Farm's are contained in property insurance policies across the country and are routinely enforced by the courts, including the Virginia Supreme Court. (*See* [PageID# 996-98] (citing cases)). In *Lower Chesapeake*, the Virginia Supreme Court, applying the "plain terms" of ACC language substantially similar to State Farm's, upheld the trial court's denial of coverage for three docks that were damaged by storm surge. 532 S.E.2d at 331. The Court stated: "Under the plain terms of Section B(1), coverage is excluded under the policy if a loss is caused 'directly or indirectly' by one of the enumerated causes or events, 'regardless of any other cause or event that contributes concurrently or in any sequence' to the loss." *Id.* Applying this language, the Virginia Supreme Court held that coverage was excluded for three docks that were damaged "at least in part" by excluded flood, waves, and storm surge, or by excluded "gradual deterioration," or "from any combination of these excluded causes." *Id.* Virginia law has long held that "[c]ourts interpret insurance policies, like other contracts, in accordance with the parties' intentions as determined from the words they have used in their contract." *Id.* Contrary to this Court's ruling, an ACC clause is not a theory that is yet to be established in Virginia (Op. at 24, [PageID# 950]), but is policy language that is subject to the normal rules of policy interpretation and has been adjudged plain and enforceable by the Virginia Supreme Court.

But Plaintiff's response never addresses that holding from *Lower Chesapeake*. Instead, Plaintiff's discussion of *Lower Chesapeake*, which is cabined to a single paragraph on page 13 of its brief, points to a different and inapposite passage in the opinion. That other passage, which

7

"next consider[s]" a different issue, addresses coverage under the policy's "Additional Coverage" for "Collapse" for a fourth dock, which collapsed in the storm. *Lower Chesapeake*, 532 S.E.2d at 331-32. This portion of the opinion has nothing to do with the Virginia Supreme Court's specific application of the ACC language to the other three docks, which "did not suffer a collapse" and were damaged "at least in part" by flood and storm surge. *Id.* at 329, 331. In short, Plaintiff's contention that "the Virginia Supreme Court's decision in *Lower Chesapeake* aligns with this Court's Opinion" ([PageID# 1106]) is wrong. It not only mischaracterizes State Farm's position, but also rests on an irrelevant portion of *Lower Chesapeake*.

The relevant legal analysis in *Lower Chesapeake*, 532 S.E.2d at 329-31, reveals that ACC clauses are recognized and enforced under established Virginia Supreme Court precedent. "It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications. A state's highest court need not have previously decided a case with identical facts for state law to be clear. It is enough that a fair reading of a decision by a state's highest court directs one to a particular conclusion." *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998).

Plaintiff also misstates the analysis and holdings of the other Virginia cases that apply ACC clauses. (*See* [PageID# 1106-07].) In *Transcontinental*, 551 S.E.2d at 317-18, the Virginia Supreme Court reiterated and explained its holdings in *Lower Chesapeake*. Contrary to Plaintiff's contentions ([PageID # 1106-07]), the Court reiterated its holding that, under the ACC clause, the water damage exclusion applied to damage caused "at least in part" by excluded water perils – unless that damage was covered by the policy's collapse coverage. *See Transcontinental*, 551 S.E.2d at 317-19. No issue similar to the collapse issue in *Transcontinental* is present here. Likewise, contrary to Plaintiff's contentions ([PageID# 1106-07]), ACC language was dispositive in *Great American Insurance Co. v. Rose Marie Bogley*, 837

8

F. Supp. 2d 570 (E.D. Va. 2011), *aff'd*, 487 F. App'x 780 (4th Cir. 2012).  In *Great American*, the court explicitly enforced the ACC language in applying an earth movement exclusion, holding that "the language of the Policy makes this exclusion operable ***even if there were other causes contributing to the wall's collapse*.**"  837 F. Supp. 2d at 574 (emphasis added).

In addition, Plaintiff improperly seeks to have the Court disregard Judge Brinkema's decision in *Barroso* as not "carefully reasoned."  ([PageID# 1107].)  Plaintiff erroneously labels the *Barroso* court's grant of summary judgment in favor of the insurer in a COVID-19 business interruption case "a cursory one-page order."  ([PageID# 1095].)  In fact, the court's order incorporates "the reasons stated during a telephone conference held on the record."  (Ex. 2 to Motion.)  As the 17-page transcript and the policy there show, the *Barroso* court enforced the policy's ACC language and a virus exclusion that explicitly referred to "[p]resence, growth, proliferation, spread or any activity of … virus" in a case where, as here, there was no allegation "that the virus itself was ever in the premises."  Tr. at 4:5-6 (Ex. 1 to Motion); *Barroso*, [ECF 17, PageID# 301] (policy's virus exclusion and ACC language).  The *Barroso* court concluded, as a matter of law, that there was no coverage "under the specific language of this insurance contract and in particular the very, in my view, clear exclusion for injuries that are the result, either directly or indirectly, of a virus."  Tr. at 16:11-20.  In reaching this conclusion, the court clearly gave careful consideration to the policy language, the parties' briefing and arguments, and the Virginia caselaw cited by the parties.  The *Barroso* court's decision, which is squarely on point and directly contrary to the result reached by this Court, supports reconsideration by this Court and/or certification pursuant to 28 U.S.C. § 1292(b).

Plaintiff also erroneously contends that the Court's ruling on the ACC language does not merit reconsideration ostensibly because it is "not dispositive."  ([PageID# 1105-06].)  This contention appears to rest on Plaintiff's argument that the Virus Exclusion does not apply unless

"a virus has spread throughout Plaintiff's property." ([PageID# 1105].)  Yet the Court's ruling addresses both the ACC language and the Virus Exclusion.  State Farm submits that there is clear error in both of these aspects of the Court's analysis of the policy language.  The Court's analysis of "accidental direct physical loss" underscores the relevance of the ACC language to the coverage issues.  That analysis makes clear that the COVID-19 virus is in the chain of causation that led to Plaintiff's claimed losses. The Court stated: "it is plausible that Plaintiff's experienced a direct physical loss when the property was deemed uninhabitable, inaccessible, and dangerous to use by the Executive Orders because of its high risk for spreading COVID-19, an invisible but highly lethal virus."  (Op. at 20, [PageID# 946].)  Under this Court's analysis, it is plain that the COVID-19 virus directly caused the Orders that Plaintiff identifies as the source of its loss and that the ACC clause, if applied, supports causation as a matter of law. It is respectfully submitted that the Court's decision not to apply the plain terms of the Policy's ACC language and, in turn, the Virus Exclusion constitutes a clear error of law that warrants correction.

### B. The Court's Interpretation Of The Policy's Virus Exclusion Overlooks And Is Inconsistent With Settled Principles of Virginia Law

State Farm respectfully submits that the Court's interpretation of the Virus Exclusion is erroneous as a matter of Virginia law and merits reconsideration.  (*See* PageID# 1000-04].)  Plaintiff's attempts to support the Court's interpretation ignore Virginia principles of contract construction and demonstrate further that the Court's interpretation should be reconsidered.

Under Virginia law, separate exclusions are construed and applied separately, even when merely separated by commas.  (*See* [PageID# 1002-03].)  Accordingly, in *TravCo*, the Virginia Supreme Court rejected an interpretation of an exclusion for "[l]atent defect, inherent vice, or any quality in property that causes it to damage or destroy itself" that argued that the phrase "that causes it to damage or destroy itself" should be read to modify not only "any quality" but also "latent defect" and "inherent vice." 736 S.E.2d at 326.  Similarly, in *Transcontinental*, the

Virginia Supreme Court made clear that the phrase "[f]lood, surface water, waves, tides, tidal waves, overflowing of any body of water or their spray" referred to separate exclusions and that the words "overflowing of any body of water" could not be read as modifying and limiting the words "flood," "surface water," "waves," "tides," and "tidal waves."  551 S.E.2d at 512.  The Court held that "the placement of commas in the exclusion indicates that each subject matter must be separately considered."  *Id.* at 513.

Under these opinions, words cannot be plucked from one exclusion and inserted into another, as the Court did here in holding that the words "Growth, proliferation, spread or presence of" should be read into the Virus Exclusion.  Moreover, this principle should apply with particular force when the disjunctive "or" is used together with a semi-colon that separates the exclusions into two separately numbered subparagraphs, as in State Farm's "Fungi, Virus Or Bacteria" Exclusion.  (*See* [PageID# 1002-04].)

Plaintiff does not cite any case that supports the Court's analysis.  Rather, Plaintiff makes a series of unsupported and untenable assertions regarding the meaning and grammar of the exclusionary language.  First, Plaintiff erroneously contends that the repeated use of "or" in the phrase "Growth, proliferation, spread or presence of 'fungi, or wet or dry rot" somehow means that the final "or" "lead[s] into" subparagraph 2 and indicates that "the list in [subparagraph] 2 should be treated the same way as the list in [subparagraph] 1."  ([PageID# 1100 n.7].)  Plaintiff provides no support from judicial decisions, legal treatises, or dictionaries for its contention.

Plaintiff's contention is contrary to the Virginia Supreme Court's decision in *TravCo*, which emphasized that, where an exclusion was "phrased in the disjunctive, using 'or' to separate the stated excluded losses," the "disjunctive may not be omitted or replaced with the conjunctive without doing violence to the plain language of the policy."  736 S.E.2d at 326.  Plaintiff's argument that the disjunctive "or" somehow joins the fungi/rot exclusion with the

Virus Exclusion and supports reading the fungi/rot language into the Virus Exclusion is an argument does the "violence to the plain language of the policy" that *TravCo* forbids.

Plaintiff also erroneously (and unclearly) claims that "if the semicolon at the end of [subparagraph] 1 renders 'or' completely disjunctive as State Farm suggests, there is no verb associated with [subparagraph] 2, and it is unclear what is excluded."  ([PageID# 1100 n.7].) Plaintiff's argument disregards the structure of the exclusions.  The list of exclusions in Section I are introduced by the ACC lead-in language, which supplies the verbs and which begins:  "We do not insure under any coverage for … [any] of the following excluded events."  (Policy at 5.) Each of the exclusions that follow lists a type or types of excluded events, sometimes with further provisions making clear the scope of the exclusions or adding further specific limitations. (*Id.* at 5-6.)  The listed excluded events, including subparagraphs (1) and (2) of the "Fungi, Virus or Bacteria" exclusion, do not have their own verbs.[3]  Rather, they all depend grammatically on the lead-in language of the ACC clause, which contains the verbs.  As other federal district courts have recognized in construing identical State Farm Policy language, this structure and wording is plain and unambiguous as to what is excluded.  *See Turek Enters. Inc. v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 5258484, at *8-9 (E.D. Mich. Sept. 3, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020).

Plaintiff's argument that the "conjunctive 'and' at the end of [subparagraph] 2, leading into [subparagraphs] 3 … indicates that [subparagraphs] 2 and 3 should be read together" is also wrong. ([PageID# 1100 n.7].)  Subparagraph 3 provides *additional*, separate limitations on coverage beyond those in subparagraphs 1 and 2, as evinced by the word "*also*" in the phrase "We *also* will not pay for:" in subparagraph 3. (Policy at 6; [PageID# 1003 n.4].)  The additional

---

[3]  Nor, for example, do the Policy's exclusions for nuclear hazard, power failure, war and military action, or volcanic eruption.  (Policy at 5, ECF 20-1, [PageID# 310].)

limitations apply to "'fungi', wet or dry rot, virus, bacteria or other microorganism," *i.e.*, all the items excluded in subparagraphs 1 and 2. (*See* Policy at 6, subparagraph (j)(3)(a)(b)(c); [PageID# 311].)  Yet **nothing** in subparagraph 3 indicates that the language of subparagraph 1 should be read into subparagraph 2.  Moreover, nothing in subparagraph 3, which sets forth additional exclusions specifically applicable to claims for reimbursement for remediation, replacement, repair, and/or testing of the insured property, indicates that a requirement that the virus be present **at the insured property** should be read into the Virus Exclusion itself.

Plaintiff's citation to *Urogynecology Specialist of Fla. LLC v. Sentinel Insurance Co.*, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020), is unavailing.  Unlike here, the policy at issue in that case excluded "Presence, growth, proliferation, spread or any activity of 'fungi,' wet rot, dry rot, bacteria or virus" all grouped together in the same numbered paragraph and in a single prepositional phrase.  2020 WL 5939172, at *3.  Moreover, unlike here, the virus exclusion in that policy had an exception to the exclusion.  *Id.*  Contrary to Plaintiff's contention ([PageID# 1100 n.7), this language, which Plaintiff does not quote for the Court, is not "nearly identical" to State Farm's policy language.  The material differences in the policy language was made manifest when the *Urogynecology* court **distinguished** State Farm's Virus Exclusion in *Turek*. 2020 WL 5939172, at *3 (citing *Turek*, 2020 WL 5258484, at *5).  Put simply, since *Turek* – which involved a State Farm Policy worded identically to the State Farm Policy here – is distinguishable from *Urogynecology*, then *Urogynecology* is distinguishable from and inapposite to State Farm's Policy.  Further, the *Urogynecology* court also declined to "make a decision on the merits of the plain language of the Policy" because many coverage forms making up the *Urogynecology* policy had not been provided to the Court.[4]  *See id.*  Here, in contrast, it is

---

[4]  Many courts have distinguished or declined to follow *Urogynecology*.  *See, e.g.*, *1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co.*, 2020 WL 7641184, at *6 (M.D. Tenn. Dec. 23, 2020); *Dye Salon, LLC*, 2021

undisputed that complete copies of State Farm's Policy and Endorsements are before the Court.

Plaintiff's erroneous, implausible, and unsupported interpretation of the wording of State Farm's Virus Exclusion does not create ambiguity or require that the exclusion be construed against State Farm.  Rather, as courts across the country have held, State Farm's Virus Exclusion and similar virus exclusions in other insurers' policies are plain and unambiguous and apply regardless of whether the plaintiff claims that virus was present or not present at the insured premises. (*See* [PageID# 991-92 & n.1] (listing cases) & *supra* at 3 n.2 (listing additional cases)).

Notably, the federal district court in *Eye Care*, 2021 WL 457890, recently found this Court's decision to be "the only case that analyzed the virus exclusion and came to a different conclusion," *i.e.*, that a virus exclusion does not apply to business losses allegedly caused by government COVID-19 closure orders.  *Id.* at *4 n.4 (citation omitted).  In *Eye Care*, the policy excluded losses due to the "[p]resence, growth, proliferation, spread or any activity of ... virus." *Id.* at *3.  Yet the court rejected the plaintiff's argument "that the [virus] exclusion's language connotes that the virus must be physically present at the business premises."  *Id.*  "[Plaintiff] points to terms like 'presence' and 'growth' as well as the fact that the other excluded occurrences in this section (fungi, wet rot, dry rot, and bacteria) could only harm the insured's property if they were physically present."  *Id.*  The court held that "***there is no textual limitation indicating that the virus must be present at the property***.  Rather, the clause excludes coverage for losses caused by the spread of viruses generally, and adds that it extends to both direct and

---

WL 493288, at *10; *Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, 2020 WL 6827742, at *6 (D. Ariz. Nov. 20, 2020); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 2021 WL 22314, at *8 n.12 (M.D. Fla. Jan. 4, 2021); *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020); *Fuel Recharge Yourself, Inc.*, 2021 WL 510170, at *4 n.6; *Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*, 2021 WL 422607, at *7 (M.D. Pa. Feb. 8, 2020); *LJ New Haven LLC v. Amguard Ins. Co.*, 2020 WL 7495622, at *7 n.7 (D. Conn. Dec. 21, 2020); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 2020 WL 7495180, at *5 (N.D. Cal. Dec. 21, 2020); *Mena Catering,* 2021 WL 86777, at *9 n.4; *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 2020 WL 6501722, at *5 (D.N.J. Nov. 5, 2020); *Pure Fitness LLC v. Twin City Fire Ins. Co.*, 2021 WL 512242, at *4 n.1 (N.D. Ala. Feb. 11,

indirect causation." *Id.* (emphasis added). It is similarly a "basic tenet of Virginia law that the courts, when interpreting a contract, 'construe it as written' and 'do not add terms the parties themselves did not include.'" *PBM Nutritionals*, 724 S.E.2d at 714 (citations omitted).

As in *Eye Care*, in other cases where the policy's virus exclusion refers to the "[p]resence, growth, proliferation, spread or any activity of ... virus," courts have ***not*** required the presence, growth, proliferation, spread or presence of a virus ***at the insured property*** to bar coverage under the exclusion. *See, e.g., Colgan*, 2021 WL 472964, at *3-4; *Nahmad*, 2020 WL 6392841, at *4, 10 n.5; *Founder Inst.*, 2020 WL 6268539, at *1; *Barroso*, Tr. at 4:4-10, 16:11-20 & [ECF 17, PageID#301] (policy's virus exclusion).

Likewise, in *LJ New Haven*, 2020 WL 749562, which involved a virus exclusion similar to State Farm's, the court "***decline[d] to import into the virus exclusion an 'onsite' or 'contamination' restriction that appears nowhere in the terms of the policy***." *Id.* at *6 (emphasis added). In enforcing a similarly-worded virus exclusion in *N&S Restaurant*, 2020 WL 6501722, the court held that "[t]here is ***no requirement***, as Plaintiff suggests, for the virus to have physically caused the loss, such as via contamination of the property." *Id.* at *3 (emphasis added). The same is true for *Hajer v. Ohio Security Ins. Co.*, 2020 WL 7211636 (E.D. Tex. Dec. 7, 2020), where the court rejected the plaintiff's argument that "'the exclusion does not apply unless Covid-19 is present at the Property'" because "[t]he text of the virus exclusion … bears ***no such limitation***." *Id.* at *5 (emphasis added).

Even more particularly, in *Diesel*, 2020 WL 4724305, in enforcing the identically-worded State Farm Virus Exclusion, the court rejected the plaintiffs' argument "that the Virus Exclusion does not apply because COVID-19 was not present at the Properties." *Id.* at *6-7. And in *Turek*,

---

2021); *Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 2020 WL 6392841, at *9 n.4 (S.D. Fla. Nov. 2, 2020); *Stanford Dental, PLLC v. Hanover Ins. Grp., Inc.*, 2021 WL 493322, at *10 (E.D. Mich. Feb. 10, 2021).

2020 WL 5258484, the court enforced the identically-worded State Farm Virus Exclusion, despite the plaintiff being "adamant that COVID-19 never entered its premises." *Id.* at *4-5, 8-9.

More recently, an Illinois Circuit Court dismissed, as a matter of law and with prejudice, COVID-19 business interruption claims against State Farm, as barred by the "plain language" of the Virus Exclusion. *Jaewook Lee, d/b/a Evanston Grill v. State Farm Fire & Cas. Co.*, 2021 WL 261545, at *6 (Ill. Cir. Ct. Cook Cty. Jan. 13, 2021). The court rejected the plaintiffs' argument that the identically-worded State Farm "Virus Exclusion clearly does not apply here, since Plaintiffs do not allege that any virus is present on its property." *Id.* at *5. "If not for COVID-19, the Governor would not have issued the Closure Orders, and Plaintiffs would not have incurred the claimed losses." *Id.* at *6. Thus, the "exclusion applies under the Policy." *Id.*

For all the reasons previously discussed, it is respectfully submitted that the Court should alter or amend its Opinion to hold that the Policy's Virus Exclusion bars Plaintiff's claims.

## II.   IN THE ALTERNATIVE, THIS COURT'S OPINION SHOULD BE CERTIFIED FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b)

Contrary to Plaintiff's contentions, certification of this Court's Opinion for interlocutory review is warranted, as all of the requirements of 28 U.S.C. § 1292(b) are met, and an immediate appeal would substantially serve the purposes of Section 1292(b).

### A.   The Court's Interpretation Of State Farm's Policy Presents Controlling Questions Of Law

The Fourth Circuit has held that an order involves "a controlling question of law" when the Court is "faced with a pure question of law and [the] resolution of it terminates the case." *Kennedy*, 657 F.3d at 195. Even "[w]hen the resolution of a question would not completely end the litigation altogether, district courts look to whether the immediate appeal would be 'serious to the conduct of the litigation, either practically or legally.'" *Hutchens v. Capital One Servs., LLC*, 2020 WL 6121950, at *4 (E.D. Va. Oct. 16, 2020) (citation omitted).

16

The Court's interpretation of the Policy's language involves controlling questions of law that warrant interlocutory review.   Plaintiff does not dispute that the interpretation of an insurance contract is a matter of law to be decided by the Court.  *See* Op. at 7-8 [PageID# 933-34]; *see also PBM Nutritionals*, 724 S.E.2d at 712.  Yet Plaintiff contends that "'a question of contract interpretation'" is inappropriate for 1292(b) review.  ([PageID# 1108-09]) (citation omitted).  But Plaintiff does not cite any Fourth Circuit opinion to support its contention.  In fact, the Fourth Circuit has repeatedly recognized the appropriateness of granting 1292(b) review of questions of contract law and contract interpretation.

For example, in *Johnson*, 148 F.3d 373, the Fourth Circuit granted 1292(b) review to decide whether an arbitration agreement was unenforceable because it allegedly lacked sufficient consideration under state contract law.  The Fourth Circuit stated that "[w]hether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract" and "the court should 'apply ordinary state law principles that govern the formation of contracts.'"  *Id.* at 377 (citation omitted).  Likewise, in *Ford*, 559 F. App'x 222, the Fourth Circuit held on 1292(b) review that a contract's forum-selection clause was inapplicable under state contract law principles. *Id.* at 224-25. Similarly, in *Florida Power & Light Co. v. Westinghouse Electric Corp.*, 579 F.2d 856 (4th Cir. 1974), the Fourth Circuit held on 1292(b) review that the UCC applied under state law to one of the contracts at issue.  *Id.* at 859-62.

The Fourth Circuit has also repeatedly granted 1292(b) review of denials of motions to dismiss.  *See, e.g.*, *FERC v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 896 (4th Cir. 2020); *Ford*, 559 F. App'x at 223-24; *Robertson v. Sea Pines Real Estate Cos.,* 679 F.3d 278, 283 (4th Cir. 2012). Contrary to Plaintiff's contentions ([PageID# 1109]), the Fourth Circuit is well-positioned to consider the limited record in this case – *i.e.*, the First Amended Complaint, the Policy, and government orders at issue, which are referenced in the Complaint. *See Robertson*,

679 F.3d at 286-88; *Philips v. Pitts Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In addition, the Fifth Circuit granted 1292(b) review of the denial of a motion to dismiss made by State Farm to determine the enforceability of State Farm's ACC language and its application to the Policy's water damage exclusion in Hurricane Katrina coverage litigation. *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 348-50 (5th Cir. 2007). The Fifth Circuit stated that the district court determined that "interpreting the State Farm policy in the noted respects … involv[es] controlling questions of law" and that "an appeal will materially advance the ultimate termination of the litigation." *Id*. at 350. Likewise, in *Vanderbrook v. Unitrin Preferred Insurance Co.*, 495 F.3d 191 (5th Cir. 2007), the district court certified, and the Fifth Circuit granted, 1292(b) review of the "controlling question of law" as to the applicability of flood damage exclusions to Hurricane Katrina insurance claims. *Id*. at 204 (citation omitted).[5]

Further, if this Court had construed the Policy in State Farm's favor as to the Virus Exclusion and accompanying ACC clause, there would be no coverage for Plaintiff's alleged losses as a matter of law. Absent coverage, each of Plaintiff's claims fail. A reversal on any of these issues in State Farm's favor would accordingly "terminate the case," and Section 1292(b)'s "controlling question of law" requirement is met. *Kennedy*, 657 F.3d at 195.

### B. There Is Substantial Ground For Difference Of Opinion As To The Controlling Questions Of Policy Interpretation

A substantial ground for difference of opinion exists as to the Court's interpretation of the Policy's Virus Exclusion and applicability of the Policy's ACC causation language. Questions where the district court's analysis is at odds with decisions from courts in other circuits, or with decisions within the circuit, are classic cases for which 1292(b) certification is appropriate. *See,*

---

[5] Other circuit courts also grant 1292(b) review of questions of insurance policy interpretation. *See, e.g., Barron v. Am. Family Mut. Ins. Co.*, 741 F. App'x 451, 452 (9th Cir. 2018)*; Monroe v. Cont. W. Ins. Co.*, 735 F.3d 783, 786-88 (8th Cir. 2013); *Stonewall Ins. Co. v. Asbestos Claims Mgmt.*, 73 F.3d 1178 (2d Cir. 1995); *Am. Mut. Reins. Co.*

*e.g.*, *Hanley v. Hand 'N Heart, LLC*, 2007 WL 201088, at *13 (E.D. Va. Jan. 22, 2007).

Here, multiple cases applying Virginia law, including binding decisions of the Virginia Supreme Court, enforce broad ACC clauses and strongly support State Farm's construction of the Virus Exclusion. *See Lower Chesapeake*, 532 S.E.2d at 331; *Transcontinental*, 551 S.E.2d at 318-19; *TravCo,* 736 S.E.2d at 326; *Great American*, 837 F. Supp. 2d at 574. As shown above (*see* Points I.A & I.B *supra*), these decisions directly conflict with this Court's findings that (i) "the anti-concurrent theory has not been established as law in this jurisdiction" and (ii) the words "Growth, proliferation, spread or presence of" should be read into the Virus Exclusion. (Op. at 23-24 [PageID# 949-50].)   Further, contrary to Plaintiff's assertion ([PageID# 1107]), the Court's interpretation of the Policy's Virus Exclusion and ACC language is irreconcilable with *Barroso*, where Judge Brinkema of this District enforced the virus exclusion and dismissed the case despite the plaintiff's contention that the virus was not present on its property.  Tr. at 4:4-10; 16:11-20 & [ECF 17, PageID#301]. These direct conflicts demonstrate that there is a controlling and "substantial ground for difference of opinion" on these issues sufficient to meet the requirements for 1292(b) interlocutory review. *See Hutchens*, 2020 WL 6121950, at *5.

Moreover, unlike this Court, nearly every other federal court that has reached a virus exclusion in a COVID-19 business interruption case has found the plaintiff's claims to be excluded and has dismissed the case. *See* [PageID# 991-92 & n.1] and *supra* at 3 n.2.  Four of those cases have enforced State Farm Virus Exclusions. *Diesel*, 2020 WL 4724305, at *6-7; *Turek*, 2020 WL 5258484, at *8-9; *Karen Trinh, DDS, Inc. v. State Farm Gen. Ins. Co.*, 2020 WL 7696080, at *3-4 (N.D. Cal. Dec. 28, 2020); *HealthNOW Med. Ctr., Inc. v. State Farm Gen. Ins. Co.*, 2020 WL 7260055, at *2 (N.D. Cal. Dec. 10, 2020); *see also Evanston Grill*, 2021 WL 261545, at *6. In sum, there is substantial ground for a difference of opinion as to the

---

*v. Am. Home Assur. Co.*, 728 F.2d 374, 375-80 (6th Cir. 1984).

interpretation and applicability of the Policy's Virus Exclusion and ACC lead-in language.

**C.    An Immediate Appeal Will Materially Advance The Ultimate Termination Of The Case**

Where, as here, "an immediate appeal would allow the Parties to define the contours of the litigation," interlocutory review is appropriate.  *Hutchens*, 2020 WL 6121950, at *6; s*ee* 28 U.S.C. § 1292(b).  An immediate appeal will provide clarity as to the viability of Plaintiff's claims and resolve the irreconcilable difference of opinion in the Eastern District of Virginia.

Moreover, "[i]n determining whether immediate appeal would advance termination of the litigation, courts may look to whether 'early appellate review might avoid protracted and expensive litigation.'" *Hutchens*, 2020 WL 6121950, at *6 (citation omitted). "[P]articularly in class actions, an [immediate] appeal may be much more likely to materially advance a case's ultimate resolution where the issue to be decided is central to the Plaintiffs' case." *Casas v. Victoria's Secret Stores, LLC*, 2015 WL 1344698, at *4 n.6 (C.D. Cal. Apr. 9, 2015).  Here, if the Fourth Circuit were to reverse, there would be no coverage and the case would be over. Thus, an immediate appeal under 1292(b) could well avoid a substantial waste of time and resources by allowing a determination on the central legal issue of policy interpretation presented by Plaintiff's claims, ***before*** class certification proceedings and ***before*** the parties incur the expense of issuing class notice, merits-related discovery on a class-wide basis, and a class trial. Section 1292(b) certification is appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in its moving papers, State Farm respectfully requests the Court to grant its motion to alter or amend its Opinion and dismiss Plaintiff's Complaint for failure to state a claim.  In the alternative, State Farm requests the Court grant 28 U.S.C. § 1292(b) certification to permit interlocutory appeal.

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY and STATE FARM FIRE AND CASUALTY
COMPANY

Date: February 25, 2021          By: ___/s/_____
                                      Theodore I. Brenner, Esq. (VSB # 17815)
                                      Alexander S. de Witt, Esq. (VSB # 42708)
                                      FREEBORN & PETERS LLP
                                      901 East Byrd Street, Suite 950
                                      Richmond, Virginia 23219
                                      Phone: (804) 644-1300
                                      Fax: (804) 644-1354
                                      tbrenner@freeborn.com
                                      adewitt@freeborn.com

                                      OF COUNSEL:
                                      DOUGLAS W. DUNHAM
                                      BERT L. WOLFF
                                      DECHERT LLP
                                      Three Bryant Park
                                      1095 Avenue of the Americas
                                      New York, NY 10036
                                      (212) 698-3500 (Telephone)
                                      (212) 698-3599 (Fax)
                                      douglas.dunham@dechert.com
                                      bert.wolff@dechert.com

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on this date, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to all filing users.

                                            /s/_____

                                     Theodore I. Brenner, Esq. (VSB # 17815)
                                     Alexander S. de Witt, Esq. (VSB # 42708)
                                     FREEBORN & PETERS LLP
                                     901 East Byrd Street, Suite 950
                                     Richmond, Virginia 23219
                                     Phone: (804) 644-1300
                                     Fax: (804) 644-1354
                                     Email: tbrenner@freeborn.com
                                               adewitt@freeborn.com