**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FILED

AUG 19 2021

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

ELEGANT MASSAGE, LLC d/b/a LIGHT
STREAM SPA, on behalf of itself and all
others similarly situated,

       **Plaintiff,**

      **v.**                                                                        **CIVIL ACTION NO. 2:20-cv-265**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY
COMPANY,

       **Defendant.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is a Motion for Class Certification filed by Elegant Massage, LLC's

("Elegant" or "Plaintiff"). ECF No. 115. The Court has also reviewed Defendants State Farm

Mutual Automobile Insurance Company's and State Farm Fire and Casualty Company's

(collectively, "State Farm" or "Defendants") Memorandum in Opposition, and Plaintiff's Reply.

ECF Nos. 135, 138. Upon review of the relevant filings, the Court finds that a hearing on Plaintiff's

Motion is not necessary and therefore denies Plaintiff's Request for Hearing. ECF No. 151. For

the reasons stated herein, Plaintiff's Motion for Class Certification is **GRANTED IN PART AND**

**DENIED IN PART**.

### I. FACTUAL AND PROCEDURAL HISTORY

On May 27, 2020, Plaintiff filed the instant suit. ECF No. 1. On June 21, 2020, Plaintiff

filed an amended complaint. ECF No. 20. In its amended complaint, Plaintiff alleges that Elegant

has owned and operated Light Stream Spa since 2016, which provides therapeutic massages in

1

Virginia Beach, Virginia. On July 22, 2019, State Farm sold an insurance policy (Policy No. 96-C6-P556-1) ("the Policy") to Plaintiff. *See* ECF No. 1 at Exhibit 1. The Policy issued to Plaintiff is an "all risk" commercial property policy, which covers loss or damage to the covered premises resulting from all risks other than those expressly excluded. *Id.* The Policy was effective through July 22, 2020 and Plaintiff paid an annual premium of $475.00. ECF No. 20 at ⁋ 27. The Policy includes coverage of "Loss of Income and Extra Expense." The standard form for Loss of Income and Extra Expense Coverage is identified as CMP-4705.1. *Id.* at ⁋ 33. Under the provision, the policy provides for the loss of business income sustained as a result of the suspension of business operations which includes action of a civil authority that prohibits access to the Plaintiff's business property. *Id.* at ⁋ 34-35. The Policy also states that it does not cover Exclusions for "Fungi, Virus or Bacteria," "Ordinance or Law," "Acts or Decisions," or "Consequential Loss" *Id.*

On March 13, 2020, President Donald J. Trump issued a National Emergency Concerning the Novel Coronavirus Disease ("COVID-19) Outbreak.[1] On March 16, 2020, the Centers for Disease Control (CDC) issued guidance recommending the implementation of "social distancing" policies to prevent the spread of the a novel strain of coronavirus, SARS-CoV-2 ("COVID-19"). On March 20, 2020, Governor Northam and the Virginia State Health Commissioner declared a public health emergency and restricted the number of patrons permitted in restaurants, fitness centers and theaters to ten or less.[2] On March 23, 2020, Governor Northam issued Executive Order No. 53, which ordered the closure of "recreational and entertainment businesses," including "spas" and "massage parlors." ECF No. 30 at Exhibit 1 at 1-4. On March 23, 2020, Governor Northam issued

---

[1] Proclamation No. 9994, 85 Fed. Reg. 15337 (March 18, 2020). "Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak." ("Presidential COVID-19 Proclamation").
[2] Order of Public Health Emergency One, "Amended Order of the Governor and State Health Commissioner Declaration of Public Health Emergency," (March 20, 2020).

2

Executive Order No. 55, which ordered all individuals in Virginia to stay home unless they were carrying out necessary life functions. *Id.* at Exhibit 1 at 5-7. On May 8, 2020, the Governor issued Executive Order No. 61, which amended Executive Order Nos. 53 and 55 and, beginning on May 15, 2020, eased some of the restrictions. *Id.* at Exhibit 1 at 8-18. Under Executive Order No. 61, spas and message centers were permitted to re-open subject to certain restrictions including limiting occupancy to 50% as well as requiring six feet between workstations, workers and patrons to wear face coverings, and hourly cleaning and disinfection while in operation. However, if businesses were unable to comply with the restrictions in Executive Order No. 61, they were ordered to remain closed. *Id.*

As a result of the policies on social distancing and restrictions on its business, Plaintiff voluntarily closed Light Stream Spa on March 16, 2020 and remained closed through May 15, 2020. *Id.* at ¶ 25. Accordingly, Plaintiff suffered a complete loss of income since closing on March 16, 2020. On March 16, 2020, Plaintiff submitted a claim for loss of business income and extra expenses under the Policy. *Id.* at ¶ 42. On March 26, 2020, Defendants denied Plaintiff's claim ("Denial Letter"). *Id.* The Denial Letter stated that the grounds for denial were because Plaintiff voluntarily closed their business on March 16, 2020, there was no civil order to close the business, there was no known damage to the business space or property resulting from COVID-19, and the Loss of Income Coverage excludes coverage for loss caused by virus. *Id.*

On May 27, 2020, Plaintiff filed the instant Class Action complaint for Declaratory Judgement (Count I) and Breach of Contract (Count II) against Defendants, pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed class and sub-class. *Id.* at ¶ 48. On July 13, 2020, Plaintiff filed a First Amended Complaint ("FAC") stating that it is bringing Counts I and II on behalf of itself and the proposed class and sub-class, as well

3

as adding a claim for Breach of Covenant of Good Faith and Fair Dealing (Count III). ECF No. 20 at ₱ 173. On August 11, 2020, Defendants filed a Motion to Dismiss Count II. ECF No. 29. Plaintiff responded in opposition and Defendants replied. ECF Nos. 39, 41. On December 9, 2020, the Court denied and granted in part Defendants' motion to dismiss. ECF No. 62.

Plaintiffs filed their Motion for Class Certification on May 27, 2021. ECF No. 115. Defendants filed a Memorandum in Opposition on June 17, 2021. ECF No. 135. Plaintiffs filed their Reply on June 30, 2021. ECF No. 143. On July 6, 2021, Defendants filed a motion for leave to file a sur-reply in opposition to Plaintiff's motion for class certification. ECF No. 153. The Court granted Defendants motion to file a sur-reply. ECF No. 161. Accordingly, this matter is ripe for judicial determination.

## II. LEGAL STANDARD

Generally, "'[d]istrict courts have wide discretion in deciding whether or not to certify a class and their decisions may be reversed only for abuse of discretion,' recognizing, of course, that this 'discretion must be exercised within the framework of Rule 23.'" *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 424 (4th Cir. 2003) (citing *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir.2001)). Accordingly, to certify a suit as a class action, the proponent of class certification has the burden of establishing that the conditions enumerated in Rule 23 of the Federal Rules of Civil Procedure have been met. *Windham v. American Brands, Inc.,* 565 F.2d 59, 64 n.6 (4th Cir. 1977) (en banc) *cert. denied,* 435 U.S. 968, 56 L. Ed. 2d 58, 98 S. Ct. 1605 (1978). Rule 23 provides, in pertinent part:[3]

---

[3] A proponent of class certification must meet all of the requirements of Rule 23(a), and satisfy one of the subsections of Rule 23(b). Plaintiffs have moved for class certification pursuant to 23(b)(3). *See* ECF No. 236.

4

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained if the prerequisites of subdivision (a) are satisfied, and in addition:

...

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23. The Court must conduct a "rigorous analysis" in determining whether the requirements of Rule 23 have been met. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982); *Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 560 (E.D. Va. 1999) (holding the same). In past proceedings, this Court has held that "in conducting its rigorous analysis of Rule 23, the Court must take a close look at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *D&M Farms v. Birdsong Corp.*, 2020 WL 7074140, at *2 (E.D. Va. Dec. 2, 2020). Whether the proponent of certification has met his or her burden is left to the trial court's discretion and will be reversed only for abuse of such discretion. *Windham*, 565 F.2d at 65. In conducting its rigorous analysis of Rule 23, the Court must take a "close look at the facts relevant to the

certification question and, if necessary, make specific findings on the propriety of certification."

*Thorn v. Jefferson—Pilot Life Ins. Co.*, 445 F. 3d 311, 319 (4th Cir. 2004) (internal quotations omitted). "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case." *Id.*

## III. DISCUSSION

To conduct a sufficient analysis of Plaintiff's Motion, the Court must apply relevant facts within Plaintiff's Complaint to Rule 23(a) and (b). The Court will evaluate Plaintiffs allegations under Rule 23. Defendants do, however, ardently contest the applicability of Rule 23(a) and 23 (b), arguing that common questions do not predominate because Plaintiffs are not similarly situated and cannot rely upon common evidence. The following analysis addresses the Rule 23 class action requirements in turn.

### A. Rule 23 (a)

1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." This Court, among others, has previously held that "classes consisting of forty or more members are considered sufficiently large to satisfy the impracticability requirement." *American Sales Company, LLC v. Pfizer, Inc.* 2017 WL 3669604, at \*6 (E.D. Va. July 28, 2017); *see, e.g., Meijer, Inc. v. Warner Chilcott Holdings Co. III., Ltd.*, 246 F.R.D. 293, 301 (D.D.C. 2007) (quoting *Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996)) (finding the numerosity requirement satisfied by a class of thirty members).

Here, Plaintiff purports to represent "19,300 other Virginia policyholders [who] purchased identical 'all-risk' insurance policies from State Farm to protect their businesses from unanticipated risks." ECF No. 116 at 1. Notably, in Interrogatory No. 6, Defendant stated, with

6

objection, that "as of December 31, 2020, there were approximately 19,300 CMP-4100 businessowners insurance policies issued to State Farm insureds in the Commonwealth of Virginia with a Loss Income and Extra Expense endorsement." *See* ECF No. 117 at Exhibit B ("Troutner Decl.").

However, Defendants challenge Plaintiff's purported class size and argue that "this expansion is incompatible with the factual allegations that Plaintiff pled in its FAC." ECF No. 135 at 7. Defendants alleges that Plaintiff limited its class members to those who were "wrongfully denied" their claims by Defendants. *See* ECF No. 135 at 7 (citing ECF No. 20 at ¶ 122). Accordingly, the Court moves to examine the numerosity element.

In its First Amended Complaint, Plaintiff brought the instant suit on behalf of all members of three proposed classes:

> Nationwide Class: All persons or entities in the United States that purchased Loss of Income and Extra Expense Coverage from Defendants, *with the same or substantially identical terms, and submitted claims for business income losses and/or extra expenses incurred as a result of* social distancing, closure and/or stay-at-home orders issued from March 2020 forward, which were denied by Defendants (the "Nationwide Class" or "Class").

> Virginia Class: All persons or entities in the Commonwealth of Virginia that purchased Loss of Income and Extra Expense Coverage from Defendants, *with the same or substantially similar terms, and submitted claims for business income losses and/or extra expenses incurred as a result of social distancing,* closure and/or stay-at-home orders issued from March 2020 forward, which were denied by Defendants (the "Virginia SubClass").

> Declaratory Judgment Class: All persons or entities in the United States that purchased insurance policies from Defendants including Loss of Income and Extra Expense Coverage and including a Virus Exclusion, *with the same or substantially identical terms* (the "Declaratory Judgment Class").

ECF No. 20 at ¶ 131 (emphasis added). In its instant motion, Plaintiff seeks to certify the following proposed Declaratory Judgment class:

All persons or entities in *the Commonwealth of Virginia with a Businessowners insurance policy issued by State Farm* on Form CMP-4100, including a Loss of Income and Extra Expense endorsement on Form CMP 4705.1 or CMP 4705.2, in effect at any time between March 23, 2020 through June 30, 2020.
ECF No. 115 (emphasis added).

However, the Court finds that because Plaintiff alleges that Defendants wrongfully denied insurance coverage because of the COVID-19 Pandemic closures, in breach of their contract, it would be inconsistent with Rule 23 to certify a class that includes every single policyholder in the Commonwealth of Virginia if they did not file a claim with State Farm. Specifically, the Court cannot certify a broad Declaratory Judgment Class that includes all insureds in the Commonwealth of Virginia because not every policy holder, of the 19,300, has Article III standing to recover damages or would be entitled to relief under Rule 23(b). *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (holding that "[e]very class member must have Article III standing in order to recover individual damages"); see also, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, at 466 (2016) (ROBERTS, C. J., concurring) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not"). As noted by the United States Supreme Court, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to *each member of the class*. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61, 131 S. Ct. 2541, 2557, 180 L. Ed. 2d 374 (2011) (emphasis added); *see also, Branch v. Gov't Emples. Ins. Co.,* 323 F.R.D. 539, 544 (E.D. Va. 2018) (holding that a class can be certified if plaintiffs show that the four requirements of Fed. R. Civ. P. 23(a) are met *and* that the class fits the requirements of at least one of the class types outlined in Fed. R. Civ. P. 23(b)") (emphasis added); *Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2021 WL 3072462, at *4 (E.D. Va. July 20, 2021).

Here, Plaintiff does not allege that State Farm breached its contract with all 19,300 policy holders or that each of the 19,300 policyholders would be entitled to relief. Notably, Plaintiff agrees that each member of the 19,300 policyholders would not be entitled to relief because Plaintiff states that they are not seeking damages on behalf of each member in the 19,300 Declaratory Judgment Class. *See* ECF No. 143. Critically, Plaintiff did not provide evidence showing that all 19,300 policyholders were impacted by the COVID-19 closures or that they filed claims with State Farm, which were denied. *See Comcast Corp. v. Behrend*, 569 U.S. 27, at 33 (2013) (holding that the party seeking class certification must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)). Thus, the Court cannot certify a Declaratory Judgment Class which would not be entitled to relief under Rule 23(b). As noted below, Plaintiff alleges in Counts II and III of the Amended Complaint that State Farm violated its contractual obligations for those policyholders whose policies were in effect between March 23, 2020 through June 30, 2020 and who filed a claim as a result of the COVID-19 closures. *See* ECF No. 20 at ¶¶ 160-172, ¶¶ 173-176. Therefore, the Court will not certify the Declaratory Judgment Class. Instead, the Court will certify the Virginia SubClass.

Although, at this time, the Court will not limit the number of members of the Virginia SubClass, the Court notes that this SubClass does meet the numerosity requirement. In interrogatory No. 5. Plaintiff asked Defendant to identify "the insureds in the Commonwealth of Virginia who submitted claims for loss of income, extra expense and/or business interruption losses related to COVID-19 Pandemic or Orders." *See* ECF No. 117 at Exhibit B at 18 ("Troutner Decl."). In response, Defendants, with objections, produced its Claim of Files of State Farm insureds located in the Commonwealth of Virginia who submitted business interruption claims related to the COVID-19 pandemic. *Id.* Moreover, Defendants identified one-hundred and eleven

9

(111) claim files of insureds located in the Commonwealth of Virginia who submitted business interruption claims relating to the COVID-19 Pandemic. *See* ECF No. 135 at ⁋ 15; *see id.* at Exhibit 3. In its memorandum, Plaintiff notes that in a forthcoming summary judgment motion "Plaintiff intends to seek certification of a damages class pursuant to Rule 23(b)(3) on behalf of Virginia insureds who submitted claims under the Policies for losses stemming from the Orders, which State Farm wrongfully denied." *See* ECF No. 116 at Fn. 3.

Therefore, even if the class were limited only to the 111 insureds who filed claims and obtain damages, the proposed Virginia Subclass meets the numerosity requirement. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014 (It is inherent in the concept of class certification that there must be a "readily identifiable" set of putative class members).

Plaintiff argues that the Court can issue a divided certification composed of a Declaratory Judgment Class and a Virginia Subclass. *See* ECF Nos. 116, 143. Notably, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has held that where monetary relief is "'incidental'" to injunctive or declaratory relief, divided certification may be permissible. *See Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015) (citing *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998); *see Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, at 2560, (2011) (discussing Allison); *Grabarczyk v. Stein*, No. 5:19-CV-48-BO, 2019 WL 4570240, at \*3 (E.D.N.C. Sept. 19, 2019) (holding that because the relief sought by plaintiff "is about uniform

injunctive or declaratory remedies," certification under Rule 23(b)(2) is appropriate").[4] However, in this case, divided certification is not appropriate because Plaintiff is seeking relief from Defendant for not covering the losses stemming from the COVID-19 closures. Thus, monetary damages are not incidental.

Nevertheless, the Court finds that Plaintiff satisfied the numerosity requirement for the purposes of certifying a Virginia SubClass and, thus, will examine the Subclass under Rule 23.

2. Commonality & Typicality

The commonality and typicality requirements tend to merge. While Rule 23(a)(2) requires that questions of law or fact be common to the class, Rule 23(a)(3) similarly requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees." *Thorn*, 445 F.3d at 318.

Here, Plaintiffs allege that Defendants unlawfully denied insureds in the Commonwealth

---

4 Sister jurisdictions have similarly held that a district court may grant divided certification which includes a declaratory judgment and damages claims. *See e.g., Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 558 (W.D. Tex. 2020) (noting that plaintiff appropriately sought a "divided certification," seeking certification of damages claims under Rule 23(b)(3) while also seeking certification of a declaratory relief claim under Rule 23(b)(2)); *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 581 (7th Cir. 2000) (divided certification "avoids the due process problems of certifying the entire case under Rule 23(b)(2) by introducing the Rule 23(b)(3) protections of personal notice and opportunity to opt out for the damages claims"); *Bland v. PNC Bank, NA, et al.*, 2016 WL 10520047, at *23 (W.D. Pa. Dec. 16, 2016) (Special Master recommending the certification of a 23(b)(2) class and subclasses as well as 23(b)(3) classes and subclasses, finding that declaratory relief sought applied to all class members). *See also Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428 n. 16 (6th Cir. 2012) ("Piecemeal certification of a declaratory-relief-only class does not present a problem of preclusion for class members who wish to pursue damages claims.").

of Virginia coverage in the all-risk policy because of the COVID-19 pandemic closures. ECF No.

20. Specifically, Plaintiffs allege that the questions common to both the Declaratory Judgment

Class and the Virginia SubClass include whether: "(1) the term 'accidental direct physical loss' in

the Policies includes losses resulting from the Orders; (2) the Virus Exclusion, Acts or Decisions

Exclusion, or Ordinance or Law Exclusion bar losses resulting from the Orders; and (3) the Loss

of Income and Extra Expense endorsements in the Policies provide coverage for losses stemming

from the Orders." ECF No. 116 at 12. Moreover, after determining the proper interpretation of the

"all-risk" policy, the Court must also determine the following questions to afford members of

Subclass relief:

> Whether Plaintiff and members of the … Virginia SubClass suffered a covered loss
> under the policies issued to members of the Classes;
> Whether Defendants' Loss of Income and Extra Expense coverage applies to the
> suspension of business caused by the social distancing, closure and/or stay–at–
> home orders issued throughout the country;
> Whether Defendants' Civil Authority coverage applies to the prohibition on access
> caused by the social distancing, closure and/or stay–at–home orders issued
> throughout the country;
> Whether, through the acts and conduct alleged above, Defendants violated their
> express or implied obligations to members of the Nationwide Class and/or Virginia
> Sub-Class;
> Whether Defendants breached their contracts of insurance through a uniform and
> blanket denial of all claims for business losses and/or extra expenses;
> Whether Defendants are barred from raising the Virus Exclusion in light of the
> claims and their prior misrepresentations regarding the exclusion;
> Whether the Virus Exclusion is inapplicable under the policies at issue, void,
> against applicable law and/or in violation of public policy;
> Whether Defendants breached their implied covenant of good faith and fair dealing
> to Plaintiff and members of the Virginia Sub-Class;
> Whether members of the Classes have been damaged by the wrongs alleged herein

ECF No. 20 at ¶ 137. Because these questions are common across each purported Subclass

member, the Court finds that there is commonality. *See Thomas v. FTS USA, LLC*, 312 F.R.D. 407,

417 (E.D. Va. 2016) (holding that the class's claims "must depend upon a common contention . .

. of such a nature that it is capable of class wide resolution").

Meanwhile, typicality ensures that "only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class." *Brousard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). Additionally, typicality will be established by plaintiffs and all class members alleging the violations by defendants. *See In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 260 (D.D.C. 2002). Here, the Plaintiff's and the claims of the Virginia Subclass arise from the same factual allegations and conduct that Defendants committed. Specifically, Plaintiff alleges that State Farm:

> Uniformly interprets "accidental direct physical loss" in Form CMP-4100 to require structural damage and exclude losses due to the Orders;
> Uniformly interprets the Virus Exclusion in Form CMP-4100 to exclude losses caused by the Orders;
> Uniformly interprets the Acts or Decisions Exclusion in Form CMP-4100 to exclude losses caused by the Orders;
> Uniformly interprets the Ordinance or Law Exclusion in Form CMP-4100 to exclude losses caused by the Orders; and
> Uniformly interprets the Loss of Income and Extra Expense endorsements on Forms CMP 4705.1 and CMP 4705.2 to exclude losses caused by the Orders.

ECF No. 116 at 13-14. Moreover, as it pertains to Counts II and III, Plaintiff's Subclass members allege that they were appropriately covered by the Policy because of the COVID-19 closure orders but were uniformly, and erroneously, denied coverage after they filed claims. *See* ECF No. 20 at ¶¶ 160-172, ¶¶ 173-76. Therefore, Plaintiff's claims are also typical among the class. *See In re Vitamins Antitrust Litig.*, 209 F.R.D. at 260 ("The typicality requirement is satisfied if each class member's claim arises from the same course of events that led to the claims of the representatives parties and each class member makes similar legal arguments to prove the defendant's liability." (internal quotations omitted).

Accordingly, the purported Virginia Subclass meets the commonality and typicality

requirements of Rule 23(a).

    3.   <u>Adequate Representation</u>

       The final requirement of a Rule 23(a) analysis necessitates that the named plaintiffs, and their counsel, fairly and adequately protect the interests of the purported class. Plaintiff must demonstrate that the named plaintiffs and putative class will "share common objectives and the same factual and legal positions," ensuring that there are no "fundamental" conflicts that go to the "heart of the litigation." *Gunnells v. Healthplan Sers., Inc.*, 348 F.3d 417, 430-31 (4th Cir. 2003).

       Here, Plaintiff is a businessowner and insured in the Commonwealth of Virginia who holds an all-risk policy from State farm. Plaintiffs seek to represent a class of businessowners and insureds who also hold an all-risk policy, filed claims because of the COVID-19 pandemic closures, and whose claims State Farm denied. Notably, Defendants do not challenge the adequacy of Plaintiff's counsel. Upon review, the Court finds no evidence to suggest that the interests of the named Plaintiff in any way contradict that of the purported class. The same goes for Plaintiff's counsel. Accordingly, requirement four of Rule 23(a) is met and Rule 23(a) is satisfied in its entirety.

**B. Rule 23(b)(3) Certification**

       An assessment of Rule 23(b)(3) is where the parties disagree. Under Rule 23(b)(3), common questions of law or fact "must predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Further, a plaintiff must establish "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* These requirements are commonly referred to as the *predominance* and *superiority* requirements of a Rule 23(b)(3) analysis.

       The predominance requirement establishes a separate and "more stringent" analysis than

Rule 23(a)'s commonality requirement. *Thorn*, 445 F.3d at 319 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001)); *cf.* Fed. R. Civ. P. 23(a)(2) (requiring only the presence of common questions of law or fact). Predominance of common questions over individual issues ensures that the "proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 623 (1997). "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013)); *see also, In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 204 (S.D.N.Y. 2018) ("'[I]ndividual questions need not be absent' in order to certify a class under Rule 23(b)(3); the text of Rule 23(b)(3) itself contemplates that such questions will be present." (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015))).

To satisfy the predominance requirement, a plaintiff must demonstrate that each element of the legal claim "is capable of proof at trial through evidence that is common to the class rather than individual." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, at 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009). "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Id.* (internal quotations and citations omitted). Accordingly, the Court must conduct a "rigorous analysis" of the Rule 23(b)(3) requirements, establishing various facts in support of such analysis. *Id.* at 323–24. In so doing, the Court is required to evaluate "Plaintiffs' methodology for proving [predominance and superiority] and must act as finder of fact in the face of conflicting expert testimony." *In re Titanium Dioxide Antitrust*

15

*Litig.*, 284 F.R.D. 328, 340 (D. Md. 2012), *amended,* 962 F. Supp. 2d 840 (D. Md. 2013).

1. Factual Findings Relevant to Plaintiff's Motion

As previously articulated, Plaintiff seeks to represent a Virginia Subclass of insureds in the Commonwealth of Virginia who are businessowners, purchased the same "all risk" commercial property insurance policy from State Farm, filed claims stemming from the COVID-19 closures, and whose claims were denied. Compl. at ¶ 1. The Policy broadly covers "Loss of Income and Extra Expense Coverage," and includes coverage for the losses described herein. Specifically, the Policy provides coverage for "Loss of Income" and "Extra Expense" due to accidental direct physical loss to property and for the "Loss of Income" and "Extra Expense" caused by certain actions of a "Civil Authority." Compl. at ¶ 3. Beginning in March 2020, the Commonwealth of Virginia and the federal government issued COVID-19 pandemic closure orders. As a result, Plaintiff, and other similarly situated business, suspended operations, lost income, and incurred extra expenses. Compl. at ¶ 7. Accordingly, Plaintiff filed a claim to Defendants seeking reimbursement for its lost income and extra expenses under the Policy's Loss of Income and Extra Expense Coverage. Compl. at ¶ 10. However, Defendants denied Plaintiff's insurance claim and refused to provide any reimbursement by claiming that Plaintiff's loss were excluded from coverage. Compl. at ¶ 11. Plaintiffs accuse Defendants of improperly and uniformly denying coverage under the insurance policy for all members of the class and, thus, allege a breach of contract. Compl. at ¶¶ 12-17.

In support of Plaintiffs theory of liability, Plaintiff alleges that State Farm has uniformly interpreted the "all risk" insurance policy to exclude coverage for losses stemming from the COVID-19 closure orders for all members of the Class. ECF No. 116 at 17. Moreover, Plaintiff alleges that it will present evidence showing that businesses in the class purchased the same "all-

risk" policy, filed similar claims to State Farm following the COVID-19 closure orders, and that State Farm uniformly denied these claims on the same basis that the "all risk" policy did not cover the allege losses.

In opposition, Defendants allege that the class lacks cohesiveness because the legal question of "…policy interpretation that Plaintiff asks the Court to resolve will apply differently to different putative class members, depending on the type of their business and the individual facts as to their operations during the COVID-19 pandemic." ECF No. 135 at 16.

2. Cohesiveness and Predominance

The Court finds that although there may be individualized issues pertaining to specific members of the class, there are common and cohesive legal questions pertaining to all members of the Virginia Subclass. Principally, the Court must determine the proper legal interpretation of the Defendants' "all risk" policy as it pertains to the COVID-19 mandatory closures. *See Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 513 (E.D. Va. 2014) (denying motion to dismiss declaratory judgment claims and stating, "declaratory judgment actions by the insured to determine coverage [are] common, and the instant action does not involve inappropriate 'procedural fencing' but rather asks the Court for a construction of definite stated rights, status, and other relations as delineated in the insurance contract"). After determining the proper interpretation of the "all-risk" policy, the Court must also determine the following questions to afford members of class relief:

> Whether Plaintiff and members of the … Virginia SubClass suffered a covered loss under the policies issued to members of the Classes;
> Whether Defendants' Loss of Income and Extra Expense coverage applies to the suspension of business caused by the social distancing, closure and/or stay–at–home orders issued throughout the country;
> Whether Defendants' Civil Authority coverage applies to the prohibition on access caused by the social distancing, closure and/or stay–at–home orders issued throughout the country;
> Whether, through the acts and conduct alleged above, Defendants violated their

17

express or implied obligations to members of the Nationwide Class and/or Virginia
Sub-Class;
Whether Defendants breached their contracts of insurance through a uniform and
blanket denial of all claims for business losses and/or extra expenses;
Whether Defendants are barred from raising the Virus Exclusion in light of the
claims and their prior misrepresentations regarding the exclusion;
Whether the Virus Exclusion is inapplicable under the policies at issue, void,
against applicable law and/or in violation of public policy;
Whether Defendants breached their implied covenant of good faith and fair dealing
to Plaintiff and members of the Virginia Sub-Class;

ECF No. 20 at ₱ 137. To grant certification under Rule 23(b), the Court must determine

whether the alleged Counts in the complaint are predominant for the class or individual.

Accordingly, the Court will examine each count in turn.

    *a. Breach of Contract*

In Count II of the Amended complaint, Plaintiff alleges breach of Contract individually

and on behalf of the class. *See* ECF No. 20 at ₱₱ 160-172. To succeed on their breach of contract

claim at trial, Plaintiff must establish the following elements: (1) a legally enforceable obligation

of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3)

injury or damage to the plaintiff caused by the breach of obligation. *Sunrise Continuing*

*Care, LLC v. Wright*, 277 Va. 148, 671 S.E.2d 132, 134 (2009). As detailed in its memorandum

and opinion regarding Defendants' Motion to Dismiss, *see* ECF No. 62. At 7-21, the Court found

that Plaintiff had alleged sufficient facts to state a claim.

First, both parties do not dispute that there was a legally enforceable contract. However,

the key issue in dispute here is whether Defendants breached its obligation to provide coverage for

losses stemming from the COVID-19 closure orders. After applying rules of contract interpretation

from the Commonwealth of Virginia, the Court previously examined the "all risk" policy and

found that Plaintiff allege sufficient facts to establish that it submitted a good faith plausible claim

to the Defendants for a "direct physical loss" covered by the policy. *Id.* at 20. Therefore, the burden shifted to the Defendants to show that Plaintiff's claim was excluded under the contract. *Id.* at 22. Accordingly, the Court determined that Plaintiff pleaded sufficient facts that neither the Virus exclusion, ordinance or and law exclusion, nor the acts or decisions exclusion applied to bar Plaintiff's claim. *Id.* at 23-28.

Since the Virginia Subclass is similarly situated as the Plaintiff, the Court also finds that the relevant facts required to prove a claim for the Plaintiff, as an individual, are substantially similar as those required to prove a claim for the Virginia Subclass. Accordingly, the questions of fact and law required to establish Count II for the Virginia Subclass are predominate across each member of the purported class.

### b. *Breach of Covenant of Good Faith and Fair Dealing*

In Count III, Plaintiff alleges a claim for Breach of Covenant of Good Faith and Fair Dealing. ECF No. 20 at ¶¶ 173-76. "Under Virginia law, the elements of a claim for breach of an implied covenant of good faith and fair dealing are "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, LTD,* 624 F.Supp.2d 443, 450 (E.D.Va. 2009) (citing *Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.,* 466 S.E.2d 382, 386 (Va. 1996). As noted previously, the Court noted that Plaintiff pleaded sufficient facts to plausibly establish that it was covered by the "all-risk" policy. ECF No. 62 at 29-30. Accordingly, the Court reasoned that since "coverage is a pre-requisite to a claim for bad faith" Plaintiff may proceed with Count III. *Id.* (citing *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.,* 709 F. Supp. 2d 432, 441 (E.D. Va. 2010) (noting that "coverage is a prerequisite to a claim for bad faith")).

Accordingly, the questions of fact and law required to establish Count III for the Virginia

19

Subclass are predominate across each member of the purported class.

3. Measurable Damages

At the class certification stage, Plaintiffs must show, by a preponderance of the evidence, that they will be able to prove damages using common proof. *See Behrend v. Comcast Corp.*, 655 F.3d at 204. However, "[s]ome variation of damages among class members does not defeat class certification." *Id.*; *see* 7AA Federal Practice & Procedure § 1781 ("[I]t uniformly has been held that differences among the members as to the amount of damages incurred does not mean that a class action would be inappropriate."). But notably, "[c]omplex and individualized questions of damages... weigh against finding predominance." *Behrend v. Comcast Corp.*, 655 F.3d at 204.

The Court acknowledges that Plaintiff may be unable to prove class-wide damages without an individualized inquiry as to the damages applicable to each class member. While it is possible that each proposed class member was injured by Defendants' alleged violation, the extent of that injury may differ depending upon the specific losses and extra expenses incurred by each businessowner during their closures. A potential "need to inquire into individual damage calculations, however, is not an impediment to class certification" since a damages inquiry necessarily requires individual proof. *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. at 349; *see also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 427–28 (4th Cir.2003) ("Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification. In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations.").

Indeed, the Fourth Circuit opined that "Rule 23(c)(4) permits courts to certify a class with respect to particular issues and contemplates possible class adjudication of liability issues with 'the members of the class [that are thereafter] required to come in individually and prove the amounts

20

of their respective claims.'" *Gunnells*, 348 F.3d at 428 (citing Fed.R.Civ.P. 23 advisory committee's note (1966 Amendment, subdivision (c)(4))). Accordingly, should the Court determine that this case requires an alternative mechanism to assess damages – even if the Court must create subclasses or first assess liability and later conduct damages trials – the Court will do so at a later proceeding, upon completion of discovery.

    4. <u>Superiority</u>

Finally, Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement ensures that proceeding by class action will "achieve economies of time, effort, and expense, and promote… uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Amchem Prods., Inc.*, 521 U.S. at 615. Plaintiffs have plausibly alleged that approximately hundreds, and perhaps, thousands of policyholders in Virginia have been impacted by Defendants' alleged wrongdoing. To resolve these claims, it would require potentially hundreds of minitrials throughout this Circuit and several sister circuits given the geographical location of potential claimants. In the interest of efficiency, time, and uniformity of decision, and because the Court also finds that common issues predominate, class action treatment is superior to any alternative means of adjudication.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Class Certification is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's Motion to certify a Declaratory Judgment Class is **DENIED**. However, the Court **ORDERS** certification of the following class:

    All persons or entities in the Commonwealth of Virginia with a Businessowners

insurance policy issued by State Farm on Form CMP-4100, including a Loss of Income and Extra Expense endorsement on Form CMP 4705.1 or CMP 4705.2, or with the same or substantially similar terms, in effect at any time between March 23, 2020 through June 30, 2020, and who submitted claims for business income losses and/or extra expenses incurred as a result of social distancing, closure and/or stay-at-home orders issued from March 2020 forward, which Defendants denied.

**IT IS FURTHER ORDERED** that Defendants shall provide to Plaintiff's counsel the names, last known addresses, home and mobile phone numbers, and email addresses of all potential members of the certified class within fifteen (15) days of the date of this Order;

**IT IS FURTHER ORDERED** that Plaintiff's counsel shall circulate notices of pendency and consent to joinder to all potential members of the certified class upon the Court's approval of the form of notice;

**IT IS FURTHER ORDERED** that any consents to joinder in this action by which additional persons join this litigation as plaintiffs under 29 U.S.C. § 216(b) must be filed with the Clerk of the Court no later than ninety (90) days after either the date that this Court approves the form of notice to the class or the date that Defendants provide to Plaintiff's counsel the names, last known mailing addresses, home and mobile phone numbers, and email addresses of all potential members of the certified class, which ever date is later.

**IT IS FURTHER ORDERED** that the filing of all dispositive motions shall be **STAYED** until further notice of this Court.

The Court **DIRECTS** the Clerk to provide copies of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
August _19_ , 2021

UNITED STATES DISTRICT JUDGE